UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| RANDALL HIX, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:14-CV-619 RLM |
| | ) | |
| BIOMET, INC., *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

OPINION and ORDER

This cause is before the court on plaintiff Randall Hix's motion to enforce what he believes to be a settlement agreement. Mr. Hix contends that the facts of his case establish that he qualified for a base award of $200,000 under the Master Settlement Agreement, that Biomet lacked good cause to challenge the value of his claim, and that it refused to negotiate in good faith during mediation. He asks me to find that Biomet breached the Master Settlement Agreement by challenging his eligibility for a base award, enforce the terms of the agreement, and enter an order requiring Biomet to withdraw all challenges to his claim for a base award and pay him the sum to which he is entitled. For the following reasons, his motion is denied.

Mr. Hix received a Magnum hip implant on July 12, 2010, underwent revision surgery to remove the device on October 31, 2012, and filed his complaint on March 27, 2014, before the April 15 deadline set forth in paragraph 1 of the Settlement Agreement. When Mr. Hix asked for an enhancement under Paragraph

3(a) of the Master Settlement Agreement, Biomet challenged the value of his claim and offered a reduced amount ($25,000) to settle. Mr. Hix rejected the offer and the parties proceeded to mediation on April 17, 2015, but couldn't resolve their differences.

Biomet challenged the value of Mr. Hix's claim and offered him a lower amount to settle based on its belief that his injuries resulted from a preexisting condition (a history of degenerative arthritis of the left hip requiring screw fixation for a slipped capital femoral epiphysis and arthroscopy) documented in his medical records, the absence of any "metal ion blood work results" to support a diagnosis of metallosis, and contributing factors such as obesity and a history of drug and alcohol addiction. *See* [Doc. No. 31-7]. Mr. Hix disagreed with Biomet's assessment, and obtained an affidavit from his treating surgeon, Dr. Richard Blakey, shortly before mediation, in an effort to bolster his claim. Dr. Blakey attested that the revision surgery was "due to pain [] from metallosis, which was secondary to the Biomet M2a Magnum hip implant," and that, in his opinion, Mr. Hix's past history and treatment for degenerative arthritis of the left hip and previous narcotics use and or alcohol abuse, didn't play a role in the failure of Mr. Hix Biomet M2A Magnum hip or the need for revision surgery. [Doc. No. 31-8]. Biomet found Dr. Blakey's opinion unpersuasive and the parties were unable to reach an agreement as to the value of Mr. Hix's claim at mediation.

Mr. Hix claims he qualified for a base settlement award (if not the enhancement), but Biomet refused to honor the terms of the agreement and

challenged his case in bad faith. Biomet says the parties never reached a meeting of the minds on the settlement value of Mr. Hix's case, so no agreement exists between the parties for me to enforce.

Paragraph 2(d) of the Master Settlement Agreement tells a plaintiff to first categorize his or her case based on the agreement's guidelines. Next, Biomet informs the plaintiff of any disagreement with that categorization. Then, if the parties still disagree as to the value of the case, they proceed to mediation. Paragraph 3 outlines two general types of mediation cases: when plaintiffs believe good cause exists that entitles them to enhanced compensation; and/or when Biomet believes good cause exists to reduce the award. Paragraph 3 also states that the parties agree to "confer in good faith" during the mediation process, and if they aren't able to reach an agreement at mediation, the case will be remanded, when the court so orders. [Doc. No. 1317-1].

Former co-lead counsel for the plaintiffs, Thomas Anapol, advised the court in May 2015 that: "The fundamental understanding between the parties when the deal was struck was that if people come and seek enhancement in these cases, all bets are off. . . . We . . . notified everybody in Group 1 and Group 2 that you need to be very mindful and careful in seeking enhancements because Biomet was going to take a closer look at the records in those instances, so everybody should have had open eyes with respect to seeking enhancement for that very reason." [Doc. No. 2904 at p. 16]. Mr. Winter told the court, "We were very clear when we negotiated this that Biomet would say, "You get a base award, and we won't

discount obesity, smoking, or age. But if you want more than the base award, we are going to challenge that to take that into account, and, in addition, we have a right to contest cases where we think it's appropriate to contest. Pursuant to . . . the settlement, and that's what we did." *Id.* at p. 17-18. I concluded in May 2015 that Biomet's practice wasn't inconsistent with the settlement agreement and wasn't done in bad faith. [Doc. No. 2909]. Mr. Hix hasn't presented any evidence to the contrary.

The Settlement Agreement explicitly allows the parties to disagree about the categorization of a case and directs them to mediation when such a disagreement occurs. The agreement defines the good cause needed for Biomet to seek to reduce the amount to be paid to a specific plaintiff as including (but not being limited to) evidence of trauma, infection, or other objective explanations for premature failure of the hip system with the absence of evidence of a metal on metal injury. In other cases, I have directed the parties to rely on the mediator to determine whether "good cause" exists for an enhancement or a deduction. I have offered a limited definition of "good cause" under the agreement – subjective rather than objective, and not limited to the examples set out in ¶ 3(b). Likewise, I have been reluctant to interfere with the parties' interpretation of the settlement agreement in individual cases. It would be inappropriate to shift gears at this point, and Mr. Hix has offered no reason for me to do so. Consistency is one of the purposes of the MDL process.

While the Master Settlement Agreement doesn't articulate the principle that if a plaintiff seeks an enhancement, Biomet can assert whatever it otherwise would have overlooked, nothing in the Agreement is inconsistent with that practice. The Master Settlement Agreement allows Biomet to seek a reduced award for any good cause, and gives examples of reasons Biomet might have. Nothing in the Master Settlement Agreement allows a plaintiff to use the presumed award as a floor while the plaintiff seeks an enhancement, just as nothing allows Biomet to use the presumed award as a ceiling while it seeks a reduction.

Mr. Hix says Biomet lacked good cause to challenge his claim and reduce the amount he was to be paid, but "good cause" under paragraph 3(b) is subjective, rather than objective, and isn't limited to the examples set out in that paragraph. Under the terms of the Settlement Agreement, Mr. Hix's case fell in the "contested cases" category once Biomet disagreed with his categorization of his claim. Mr. Hix then had two options – mediate his claim or proceed to trial on the merits.

Under paragraph 3(c), the parties agreed to "confer in good faith" during the mediation process. Mr. Hix contends that Biomet breached that duty. Biomet argues that it had valid reasons to challenge the value of Mr. Hix's claim and to offer a lower amount in settlement. Again, I agree.

To the extent Mr. Hix suggests that Dr. Blakey's affidavit established a right to a base award under the Settlement Agreement, he is mistaken. Dr. Blakey's opinion was stated in conclusory terms and wasn't unsupported by objective

medical evidence. A jury might well accept Dr. Blakey's testimony, but Biomet could reasonably rely on Mr. Hix's medical history in determining what it believed to be the cause of his injuries and the value of his claim. Mr. Hix hasn't presented any evidence to support his claim that Biomet acted in bad faith when it challenged the valuation of his claim or rejected his offer to settle for a higher amount during mediation. Nothing in the Settlement Agreement forbids Biomet from deciding not to assert grounds for reductions when plaintiffs agree to the base award.

Settlement is a matter between the parties, and there are no steps the court can take to settle a case without the parties' consent. Mr. Hix's case remains pending, but if he wants to settle it, he will have to negotiate a new agreement with Biomet.

In light of my earlier holdings that Biomet's practice – responding to enhancement requests with withdrawal of the base award, a firm offer of a smaller award, and a refusal to negotiate at mediation – doesn't constitute bad faith, *see* Case Management Order No. 3 [Doc. No. 2909], Mr. Hix motion [Doc. No. 31] is DENIED.

SO ORDERED.

ENTERED: March 29, 2017

/s/ Robert L. Miller, Jr.
Judge, United States District Court