UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

RANDALL HIX, *et al.*,

    Plaintiffs,

v.

ZIMMER BIOMET HOLDINGS, INC, *et al.*,

    Defendants.

Case No. 3:18-cv-00437-RCJ-WGC

ORDER

    In 2010, Randall Hix had an artificial hip replacement using a Biomet M2a Magnum implant. Hix and his wife, Liana Hix, brought this suit against Defendants Zimmer Biomet Holdings, Inc., Biomet, Inc., Biomet Orthopedics, LLC, and Biomet U.S. Reconstruction, LLC, (collectively "Biomet") alleging the artificial hip device was defective. (Amended Complaint, ECF No. 201). Presently before the Court is Hix's motion to exclude portions of the testimony of Steven M. Kurtz, Ph.D., an expert witness retained by Biomet. (ECF No. 277). Biomet opposes the motion. (ECF No. 282). Having considered the arguments and the supporting record, the Court will grant the motion.

I.  PROCEDURAL HISTORY

    On October 2, 2012, the Judicial Panel on Multidistrict Litigation transferred the first actions regarding Biomet M2a Magnum hip implants to the Northern District of Indiana as the Biomet M2a Magnum Hip Implants Products Liability multi-district litigation, MDL Case No. 3-12-md-2391. In February 2013, the MDL court entered an order allowing parties to file new actions directly into the

MDL action. In March 2014, Hix initiated this action by filing a complaint in the Biomet M2a Magnum MDL. Following consolidated pre-trial proceedings primarily directed to common-issue discovery and to some case-specific discovery, the MDL court transferred this matter to the District of Nevada in September 2018.

## II.  BACKGROUND

On July 12, 2010, Hix (then 36 years old) had a total hip arthroplasty (THA, i.e., joint replacement) performed by Dr. Richard Mullins. Dr. Mullins implanted the Biomet M2a Magnum metal-on-metal (MoM) artificial hip device.

Prior to the THA procedure, Hix had surgery in 1997 on his left hip due to a Slipped Capital Femoral Epiphysis when he was 13 years old.

In 2008, Hix began experiencing pain in his left hip that worsened over time. In March 2010, Hix was arthroscopically treated for left hip femoroacetabular impingement. When the procedure did not resolve Hix's pain, he was referred to Dr. Mullins, who recommended a total left hip replacement. Hix and Dr. Mullins met with a Biomet sales representative who demonstrated Biomet's sample hip prosthetics. Dr. Mullins thought that a metal-on-metal device would provide Hix a better quality of life – and would last longer – than a metal-on-polyethylene device. Hix decided to have the M2a Magnum MoM device implanted.

Following the THA procedure, Hix began again experiencing pain in his left hip in March 2012. He saw Dr. Suzanne Zsikla, who referred Hix to Dr. Richard Blakey, an orthopedic surgeon. Hix saw Dr. Blakey in August 2012. A radiograph was taken, showing the MoM implant with reactive bone at the end of the stem. A presumptive diagnosis of metallosis[1] was made.

---

[1] In his deposition, Hix's treating physician, Dr. Blakey, described metallosis as an inflammatory reaction to the wear product of an MoM device.

A bone scan performed on September 5, 2012, indicated Hix's hip was normal and did not indicate an abnormal uptake. On September 11, 2012, Dr. Blakey indicated he was fairly certain Hix did not have an infection and recommended a revision of the Biomet M2a Magnum MoM hip device.

Dr. Blakey performed the revision surgery on Hix's left hip on October 31, 2012. Dr. Blakey removed the Biomet acetabular cup and replaced it with a Zimmer metal-on-polyethylene constrained hip construct. He also removed damaged tissue and implanted a constrained liner to reduce the chance of dislocation or subluxation. Dr. Tony Yang examined the removed tissues for pathology and noted chronic inflammation, reactive hyperplasia, and pigmented macrophages containing a grayish pigment consistent with foreign material. Dr. Blakey's post-operative diagnosis noted painful left metal-on-metal total hip secondary to metallosis.

### III. LEGAL STANDARDS

**A. Admissibility of Expert Testimony**

Federal Rule of Evidence 702 governs the admission of expert testimony and provides that if a witness is qualified as an expert by knowledge, skill, experience, training, or education, the witness can provide opinion testimony so long as:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The task of the trial court is to "assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Primiano v. Cook,* 598 F.3d 558, 564 (9th Cir. 2010)

3

*quoting Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 597 (1993).  This task applies to all expert testimony governed by Rule 702.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-148 (1999).  Rule 702 "is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of [the relevant] discipline." *Daubert*, 509 U.S. at 592.  The party offering the expert witness "has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702 Advisory Committee Notes.

"[M]any factors will bear on the inquiry."  *Daubert*, 509 U.S. at 593.  In considering the admissibility of scientific expert testimony, the Supreme Court generally noted four factors while acknowledging that it was not setting "out a definitive checklist or test." *Id.*  As summarized by the Ninth Circuit, a court may consider: "1) whether the theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error and the existence of standards controlling a technique's operation; and (4) whether or not the theory is generally accepted." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000).  However, these factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho*, 526 U.S. at 150.  Ultimately, the court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

**IV. DISCUSSION**

Hix argues the Court should preclude admission of certain statements and opinions expressed by Biomet's retained expert, Dr. Steven Kurtz.  Biomet proffers Dr. Kurtz for his expertise as a biomechanical engineer specifically as related to orthopedic implants.  While Hix notes several

statements and opinions proffered by Dr. Kurtz in his report, each of the statements generally concerns Dr. Kurtz's opinion that he summarizes as follows:

> The design factors in this case, especially the 48 mm femoral head, protected Mr. Hix from dislocation. Clinical and patient factors being equal, the use of a metal-on-polyethylene bearing in Mr. Hix would have resulted in increased risk of dislocation as compared with the metal-on-metal design. Based on the clinical, patient, and device factors in this case, there is insufficient evidence that use of an alternative bearing in his left hip would have averted his need for revision surgery. Patient and clinical factors being equal, the use of a M-PE or C-PE bearing would have put Mr. Hix at increased risk of dislocation, which would put him at increased risk of revision.

(*Kurtz Expert Report* at ix, ECF No. 277, Exh.1). Hix argues that Dr. Kurtz is not medically qualified to render this opinion, rendering the opinion as speculative and unreliable. He further argues that the opinions are misleading and not relevant to this matter, as they concern risks of dislocation although his revision surgery was not the result of a dislocation. Hix argues his revision was due to metallosis.

Biomet responds that Dr. Kurtz has the necessary expertise to opine on the utility and benefits of the M2a device. Biomet further argues that Hix cannot rely on any reference to "metallosis" in Dr. Blakey's operative report because Dr. Blakey's lacked a sufficient basis for that opinion.

Hix provides only a cursory argument that Dr. Kurtz lacks the necessary expertise. Hix does not offer any explanation as to why risks of dislocation of certain hip implant devices, from a mechanical perspective, requires additional medical expertise. Hix's unsupported assertions that the Dr. Kurtz's opinion requires medical expertise has not persuaded the Court that such medical expertise is necessary for this opinion.

The Court is concerned, however, regarding the relevance of the proffered opinion to this matter and whether any such relevance is outweighed by its potential to be misleading and confusing if presented to the jury. Biomet has established that Dr. Kurtz is qualified, as a mechanical engineer, to opine on the relative risks of dislocation between different types of hip implant devices for persons

engaged in the process of choosing one type of implant over another. Such expertise does not, however, render those expert opinions relevant to this matter. Biomet's argument that Dr. Kurtz's opinion "relates to the utility and benefits of the M2a device in Mr. Hix's case" does not cure this deficiency. Even assuming the opinion is construed as suggesting that the M2a Magnum device provided Hix with a lower risk of revision due to dislocation, Biomet has not explained, to the satisfaction of the Court, how the risk of revision due to dislocation from a device that was not implanted is relevant to whether the revision surgery for the device that was implanted was the result of a product defect. Accordingly, the Court will, at this time, preclude Dr. Kurtz from offering his opinion as reflected in his summary of that opinion as noted because any relevance of the testimony appears to be outweighed by its potential to be misleading and confusing to the jury.

## CONCLUSION

IT IS HEREBY ORDERED that the Partial Motion in Limine to Exclude the Portions of the Testimony of Defendants' Expert Steven M. Kurtz, Ph.D., brought by Randall Hix and Liana Hix (ECF No. 277) is GRANTED as to the opinion recited above. This exclusion of Dr. Kurtz's opinion, as recited above, is without prejudice to the Biomet Defendants establishing the relevance of the opinion at trial prior to attempting to offer the opinion into evidence.

IT IS SO ORDERED.

Dated: March 29, 2022

_____
ROBERT C. JONES
United States District Judge