1
2
3
4

**UNITED STATES DISTRICT COURT**

5

**DISTRICT OF NEVADA**

6   RANDALL HIX, *et al.*,

7        Plaintiffs,                                    Case No. 3:18-cv-00437-RCJ-WGC

8   v.                                                            **ORDER**

9   ZIMMER BIOMET HOLDINGS, INC, *et al.*,

10       Defendants.

11

12        In 2010, Randall Hix had an artificial hip replacement using a Biomet M2a Magnum implant.

13   Hix and his wife, Liana Hix, brought this suit against Defendants Zimmer Biomet Holdings, Inc.,

14   Biomet, Inc., Biomet Orthopedics, LLC, and Biomet U.S. Reconstruction, LLC, (collectively

15   "Biomet") alleging the artificial hip device was defective.  (Amended Complaint, ECF No. 201).

16   Presently before the Court is Biomet's motion to exclude Jeffrey F. Shapiro, M.D., one of Hix's

17   case-specific experts (ECF No. 276).  Hix opposes the motion.  (ECF No. 285).

18   **I.   PROCEDURAL HISTORY**

19        On October 2, 2012, the Judicial Panel on Multidistrict Litigation transferred the first actions

20   regarding Biomet M2a Magnum hip implants to the Northern District of Indiana as the Biomet M2a

21   Magnum Hip Implants Products Liability multi-district litigation, MDL Case No. 3-12-md-2391.  In

22   February 2013, the MDL court entered an order allowing parties to file new actions directly into the

23   MDL action.  In March 2014, Hix initiated this action by filing a complaint in the Biomet M2a

24   Magnum MDL.  Following consolidated pre-trial proceedings primarily directed to common-issue

1  discovery and to some case-specific discovery, the MDL court transferred this matter to the District

2  of Nevada in September 2018.

3  **II. BACKGROUND**

4      On July 12, 2010, Hix (then 36 years old) had a total hip arthroplasty (THA, i.e., joint

5  replacement) performed by Dr. Richard Mullins.  Dr. Mullins implanted the Biomet M2a Magnum

6  metal-on-metal (MoM) artificial hip device.

7      Prior to the THA procedure, Hix had surgery in 1997 on his left hip due to a Slipped Capital

8  Femoral Epiphysis when he was 13 years old.

9      In 2008, Hix began experiencing pain in his left hip that worsened over time.  In March 2010,

10  Hix was arthroscopically treated for left hip femoroacetabular impingement.  When the procedure

11  did not resolve Hix's pain, he was referred to Dr. Mullins, who recommended a total left hip

12  replacement.  Hix and Dr. Mullins met with a Biomet sales representative who demonstrated

13  Biomet's sample hip prosthetics.  Dr. Mullins thought that a metal-on-metal device would provide

14  Hix a better quality of life – and would last longer – than a metal-on-polyethylene device.  Hix

15  decided to have the M2a Magnum MoM device implanted.

16      Following the THA procedure, Hix began again experiencing pain in his left hip in March

17  2012.  He saw Dr. Suzanne Zsikla, who referred Hix to Dr. Richard Blakey, an orthopedic surgeon.

18  Hix saw Dr. Blakey in August 2012.  A radiograph was taken, showing the MoM implant with

19  reactive bone at the end of the stem.  A presumptive diagnosis of metallosis[1] was made.

20      A bone scan performed on September 5, 2012, indicated Hix's hip was normal and did not

21  indicate an abnormal uptake.  On September 11, 2012, Dr. Blakey indicated he was fairly certain

22

23

24

---

[1] In his deposition, Hix's treating physician, Dr. Blakey, described metallosis as an inflammatory reaction to the wear product of an MoM device.

1   Hix did not have an infection and recommended a revision of the Biomet M2a Magnum MoM hip

2   device.

3         Dr. Blakey performed the revision surgery on Hix's left hip on October 31, 2012.  Dr. Blakey

4   removed the Biomet acetabular cup and replaced it with a Zimmer metal-on-polyethylene

5   constrained hip construct.  He also removed damaged tissue and implanted a constrained liner to

6   reduce the chance of dislocation or subluxation.  Dr. Tony Yang examined the removed tissues for

7   pathology and noted chronic inflammation, reactive hyperplasia, and pigmented macrophages

8   containing a grayish pigment consistent with foreign material.  Dr. Blakey's post-operative diagnosis

9   noted painful left metal-on-metal total hip secondary to metallosis.

10         Two weeks after this surgery, Hix had an MRI of his lumbar spine, which showed an L5-S1

11   right-sided paracentral disc protrusion causing mild stenosis of the right neural foramina.

12         On January 10, 2013, Hix was seen by Dr. Blakey as Hix had "developed some cellulitis

13   about the left hip wound."  Dr. Blakey informed Hix that he might need to aspirate the hip.  This

14   procedure was performed on January 24, but produced "little fluid, if any."  Cultures on the fluid

15   were negative for infection.  Hix was continuing to have pain when he had an office visit with Dr.

16   Blakey in June 2013.  Dr. Blakey "talked to [Hix] about the fact that sometimes the metallosis

17   reaction comes back even though we have revised the hip."  Dr. Blakey performed another left-hip

18   aspiration in August 2013 and gave Hix a steroid injection.

19         Hix had a follow-up visit a week later.  Dr. Blakey recorded in his notes: "I suspect that he

20   is having continued inflammation, possibly from the metallosis."  Following an office visit two

21   weeks later, Dr. Blakey noted there was not much else he could do for Hix's pain.

22         Hix continued to have pain through 2014.  In November 2014, Hix saw Dr. Martin Arraiz,

23   who noted radiculitis (pain radiating along a nerve resulting from inflammation at the root of the

24

3

nerve connecting to the spine) in the lower left extremity.  Hix received an epidural injection in December 2014.

Hix saw Dr. Blakey in January 2015.  Dr. Blakey noted Hix "is actually getting better with respect to his left hip.  He is still having pain."  Following a July 2015 office visit, Dr. Blakey noted "Hix has had increasing pain in his left hip revision last month."

On October 21, 2017, Hix went to the emergency room the day following "kicking an object . . . with his left leg" that resulted in "sudden onset pain left hip."  The emergency doctor noted a final impression of "[p]ain of left hip joint" and "[d]islocation of left hip."

Two days later, Dr. Chad Watts performed a revision surgery on Hix's left hip for "failed constrained liner with dislocation of left total hip."  Dr. Watts removed the cup with constrained liner and replaced it with a "62 Biomet OsseoTi shell with dual mobility liner" and "2B +6 revision ceramic head with a titanium sleeve."  Dr. Watts notes indicate that Hix "was very scarred in and had a pretty stiff hip.  There was some metal staining from his prior metallosis, but overall the muscle and tissues were in reasonable shape."  He further noted the "constrained liner was broken – there had clearly been chronic impingement which led to failure."

Four weeks after the surgery, Hix visited the emergency room with "pain to the surgical site, redness, and drainage around surgical incision associated with fever (102.0 deg F) and chills."  Hix underwent surgery the following day to open the surgical wound for "drainage with debridement and placement of wound VAC."  Two days later, Dr. Robert Crouse performed another surgery.  As Hix had "an obvious deep infection," Dr. Crouse removed the artificial hip devices, removed infected material for biopsy and culture, and performed a femoral osteotomy.  Dr. Crouse further placed an antibiotic impregnated cement spacer in the acetabulum, the location of the infection.  The material removed for culture showed growth for Staphylococcus lugdunensis, with 1 of 3 cultures showing

1  growth for Methicillin-Resistant Staphylococcus aureus.  Hix remained on IV antibiotics for six

2  weeks.

3        On February 8, 2018, Dr. Watts implanted an artificial hip consisting of a Stryker Restoration

4  cup and stem with a ceramic head and cable.

5        Hix had an office visit with Dr. Ali Nairizi in June 2018 for pain management.  Over the

6  following year, Hix underwent a femoral nerve block, lumbar sympathetic nerve block, and SI joint

7  injections with corticosteroids for pain.

8        In September 2019, Dr. Denis Patterson implanted a temporary dorsal root ganglion spinal

9  cord stimulator for pain management and implanted a permanent stimulator the next month.

10      In November, Hix had an office visit with Dr. Watts, reporting a significant increase in pain

11  and redness and swelling around the left hip.  Dr. Watts recorded the impression of "[l]ikely infected

12  left hip replacement."  Dr. Watts aspirated the left hip.  A culture of the withdrawn material indicated

13  a streptococcus viridans infection.  Hix underwent surgery on his left hip the following day, with

14  Dr. Watts performing a tissue debridement and irrigation, and exchanging the MDM liner, the

15  ceramic head and MDM head.  On December 1, 2019, Dr. Watts performed another debridement

16  and irrigation of the hip.  Hix was hospitalized for the infected left hip from November 22, through

17  December 11, 2019.

18      In May 2020, Dr. Patterson exchanged the implantable power generator for the nerve

19  stimulator.

20  **III. LEGAL STANDARDS**

21    **A. Admissibility of Expert Testimony**

22       Federal Rule of Evidence 702 governs the admission of expert testimony and provides that

23  if a witness is qualified as an expert by knowledge, skill, experience, training, or education, the

24  witness can provide opinion testimony so long as:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The task of the trial court is to "assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Primiano v. Cook,* 598 F.3d 558, 564 (9th Cir. 2010) *quoting Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 597 (1993). This task applies to all expert testimony governed by Rule 702. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-148 (1999). Rule 702 "is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of [the relevant] discipline." *Daubert*, 509 U.S. at 592. The party offering the expert witness "has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702 Advisory Committee Notes.

"[M]any factors will bear on the inquiry." *Daubert*, 509 U.S. at 593. In considering the admissibility of scientific expert testimony, the Supreme Court generally noted four factors while acknowledging that it was not setting "out a definitive checklist or test." *Id.* As summarized by the Ninth Circuit, a court may consider: "1) whether the theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error and the existence of standards controlling a technique's operation; and (4) whether or not the theory is generally accepted." *United States v.Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000). However, these factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho*, 526 U.S. at 150.

1   Ultimately, the court must "make certain that an expert, whether basing testimony upon professional

2   studies or personal experience, employs in the courtroom the same level of intellectual rigor that

3   characterizes the practice of an expert in the relevant field." *Id.* at 152.

4   **IV. DISCUSSION**

5      **A. Failure to Warn Opinions**

6      Biomet seeks to exclude Dr. Shapiro's opinions that Biomet failed to adequately warn Dr.

7   Mullins and Hix of the risks of the M2a Magnum device.

8      Dr. Shapiro states, in his supplemental report, that: "Biomet failed to provide Dr. Mullins

9   and Mr. Hix with proper warnings of the risks of using metal-on-metal implants. Biomet's literature,

10   such as the patient package insert and/or Surgical Technique brochures did not provide adequate

11   warning of the known risks associated with the M2A metal-on-metal hip implants." He further states

12   that Biomet internally acknowledged "the failure modes of metal-on-metal devices and documented

13   the different biologic risks due to cobalt and chromium metal debris" but that "this information was

14   either not or not properly relayed directly to Mr. Hix when he met with the representatives nor to

15   Dr. Mullins."

16      Biomet argues that Dr. Shapiro is not qualified to opine on the adequacy of Biomet's

17   warnings regarding the medical device because he lacks regulatory or warning drafting experience.

18   The Court agrees. To the extent that Hix seeks to offer Dr. Shapiro's testimony regarding the

19   adequacy of Biomet's regulatory warnings, that is, whether certain information should or should not

20   have been included in the regulated warnings, Hix has not shown that Dr. Shapiro is qualified to

21   offer such testimony. The Court would note, however, that in granting Biomet's motion, the Court

22   does so only to the extent that Biomet has established that Dr. Shapiro is not qualified in the

23   regulatory process regarding warnings accompanying medical devices. That lack of expertise does

24

1  not, of itself, establish that Dr. Shapiro cannot offer expert testimony as a surgeon regarding the

2  substance of Biomet's warnings and communications to Hix and his doctor.

3  **B. Pain Management**

4        Biomet asserts that Dr. Shapiro is not qualified to offer an opinion on pain management.  Hix

5  effectively agrees but notes that "it is not necessary for Dr. Shapiro to be qualified as a pain

6  management specialist in order to assess a patient's hip pain."  Accordingly, the Court will preclude

7  Dr. Shapiro from providing expert testimony on pain management.  The Court notes, however, that

8  Dr. Shapiro's lack of expertise in pain management does not preclude Dr. Shapiro from offering

9  expert opinion on the causes of Hix's hip pain.

10  **C. Causation of Left Hip Pain**

11        Biomet argues that Dr. Shapiro's opinions regarding causation of pain should be excluded

12  because he failed to conduct a differential diagnosis with reasonable diligence.  The Court disagrees.

13  *Daubert* requires only that an expert's opinion has "a reliable basis in the knowledge and experience

14  of [the relevant] discipline," *Daubert*, 509 U.S. at 592, not an unassailable basis for that opinion.

15  Biomet's arguments – that Dr. Shapiro distinguished between buttock and leg pain (lumbar spine)

16  versus groin and thigh pain (hip implant) and failed to consider the impact of Hix's use of opioids

17  on Hix's perception of pain – go to the weight not the admissibility of Dr. Shapiro's expert opinions

18  on causation.  The Court will not preclude Dr. Shapiro from offering expert opinion on the causation

19  of Hix's hip pain.

20  **D. Significant Permanent Damage of Left Hip**

21        Biomet argues that Dr. Shapiro's opinion that the M2a Magnum device caused significant

22  permanent damage to Hix's left hip should be excluded because Dr. Shapiro did not physically

23  examine Hix (but examined him by videoconference) and because Dr. Shapiro determined that Hix

24  had a reduced range of motion in his lumbar spine but reasonable range of motion in his hips.  These

arguments do not establish that Dr. Shapiro's opinion is inadmissible as unreliable.   Rather, the

arguments concern issues appropriate to the weight of Dr. Shapiro's opinions.   The Court will not

preclude Dr. Shapiro from offering expert opinion regarding whether Hix suffered permanent

damage to his left hip.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion in Limine to Exclude Plaintiff's Case-Specific

Expert Jeffrey F. Shapiro, M.D. brought by Zimmer Biomet Holdings, Inc., Biomet, Inc., Biomet

Orthopedics, LLC, and Biomet U.S. Reconstruction, LLC.  (ECF No. 276) is GRANTED in part

and DENIED in part as set forth above.

IT IS SO ORDERED.

Dated: March 29, 2022

_____
ROBERT C. JONES
United States District Judge