**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RANDALL HIX, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>ZIMMER BIOMET HOLDINGS, INC, *et al.*,<br><br>    Defendants. | Case No. 3:18-cv-00437-RCJ-WGC<br><br>**ORDER** |

In 2010, Randall Hix had an artificial hip replacement using a Biomet M2a Magnum implant. Hix and his wife, Liana Hix, brought this suit against Defendants Zimmer Biomet Holdings, Inc. ("Zimmer Biomet Holdings"), Biomet, Inc., Biomet Orthopedics, LLC, and Biomet U.S. Reconstruction, LLC, (collectively "Biomet") alleging the artificial hip device was defective. (Amended Complaint, ECF No. 201). Presently before the Court is Zimmer Biomet's Motion for Summary Judgment (ECF No. 272). Hix opposes the motion. (ECF No. 289).

**I.   PROCEDURAL HISTORY**

On October 2, 2012, the Judicial Panel on Multidistrict Litigation transferred the first actions regarding Biomet M2a Magnum hip implants to the Northern District of Indiana as the Biomet M2a Magnum Hip Implants Products Liability multi-district litigation, MDL Case No. 3-12-md-2391. In February 2013, the MDL court entered an order allowing parties to file new actions directly into the MDL action. In March 2014, Hix initiated this action by filing a complaint in the Biomet M2a

Magnum MDL.  Following consolidated pre-trial proceedings, the MDL court transferred this matter to the District of Nevada in September 2018.  In July 2020, the Hix's amended their complaint (ECF No. 201), adding Zimmer Biomet Holdings as a defendant.

## II.  BACKGROUND

On July 12, 2010, Hix (then 36 years old) had a total hip arthroplasty (THA, i.e., joint replacement) performed by Dr. Richard Mullins.  Dr. Mullins implanted the Biomet M2a Magnum metal-on-metal (MoM) artificial hip device.

In 2008, Hix began experiencing pain in his left hip that worsened over time.  In March 2010, Hix was arthroscopically treated for left hip femoroacetabular impingement.  When the procedure did not resolve Hix's pain, he was referred to Dr. Mullins, who recommended a total left hip replacement.  Hix and Dr. Mullins met with a Biomet sales representative who demonstrated Biomet's sample hip prosthetics.  Dr. Mullins thought that a metal-on-metal device would provide Hix a better quality of life – and would last longer – than a metal-on-polyethylene device.  Hix decided to have the M2a Magnum MoM device implanted.

Following the THA procedure, Hix began again experiencing pain in his left hip in March 2012.  He saw Dr. Suzanne Zsikla, who referred Hix to Dr. Richard Blakey, an orthopedic surgeon.  Hix saw Dr. Blakey in August 2012.  A radiograph was taken, showing the MoM implant with reactive bone at the end of the stem.  A presumptive diagnosis of metallosis[1] was made.

A bone scan performed on September 5, 2012, indicated Hix's hip was normal and did not indicate an abnormal uptake.  On September 11, 2012, Dr. Blakey indicated he was fairly certain

---

[1] In his deposition, Hix's treating physician, Dr. Blakey, described metallosis as an inflammatory reaction to the wear product of an MoM device

Hix did not have an infection and recommended a revision of the Biomet M2a Magnum MoM hip device.

Dr. Blakey performed the revision surgery on Hix's left hip on October 31, 2012. Dr. Blakey removed the Biomet acetabular cup and replaced it with a Zimmer metal-on-polyethylene constrained hip construct.

Prior to 2015, Zimmer Holdings, Inc. existed as a holding company. On June 24, 2015, Zimmer Holdings, Inc. completed its acquisition of Biomet, Inc,[2] and changed its name to Zimmer Biomet Holdings, Inc.

## III. LEGAL STANDARDS

**A. Summary Judgment**

In considering a motion for summary judgment, the court performs "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *United States v. Arango*, 670 F.3d 988, 992 (9th Cir. 2012). To succeed on a motion for summary judgment, the moving party must show (1) the lack of a genuine issue of any material fact, and (2) that the court may grant judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Arango*, 670 F.3d at 992.

---

[2] Zimmer Holdings acquisition of Biomet, Inc. was accomplished by means of a merger between Owl Merger Sub (which appears to have been created solely for purposes of the motion and was an indirect wholly owned subsidiary of Zimmer Holdings) and LVB Acquisition, Inc. (LVB), the parent company of Biomet, Inc. LVB continued as the surviving company of this merger, becoming an indirect wholly owned subsidiary of Zimmer Holdings.

A material fact is one required to prove a basic element of a claim. *Anderson,* 477 U.S. at 248. The failure to show a fact essential to one element, however, "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Additionally, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012) (quoting *Anderson*, 477 U.S. at 252).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. As such, when the non-moving party bears the initial burden of proving, at trial, the claim or defense that the motion for summary judgment places in issue, the moving party can meet its initial burden on summary judgment "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Conversely, when the burden of proof at trial rests on the party moving for summary judgment, then in moving for summary judgment the party must establish each element of its case.

Once the moving party meets its initial burden on summary judgment, the non-moving party must submit facts showing a genuine issue of material fact. Fed. R. Civ. Pro. 56(e); *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000). As summary judgment allows a court "to isolate and dispose of factually unsupported claims or defenses,"

4

*Celotex*, 477 U.S. at 323-24, the court construes the evidence before it "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). The allegations or denials of a pleading, however, will not defeat a well-founded motion. Fed. R. Civ. Pro. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). That is, the opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. Pro. 56(e)).

### B. Personal Jurisdiction

A two-part test establishes whether the Court has personal jurisdiction over a nonresident defendant. First, the plaintiff must show that the state's long-arm statute confers personal jurisdiction over the nonresident. If so, then application of the statute must be consistent with federal due process. *FDIC v. British-American Ins. Co., Ltd.*, 828 F.2d 1439, 1441 (9th Cir. 1987); *Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392, 1396 (9th Cir. 1986). Nevada's long-arm statute, Nev. Rev. Stat. §14.065, grants jurisdiction over out-of-state defendants if the cause of action arises from certain enumerated acts, including transaction of business or tortious conduct within the state. *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207 (9th Cir. 1980); *Wells Fargo & Co. v. Wells Fargo Express Company*, 556 F.2d 406, 414 (9th Cir. 1977). This statute has been construed liberally, proscribed only by federal due process. *Levinson v. Second Judicial Dist. Court*, 742 P.2d 1024, 1025 (Nev. 1987); *Videotronics, Inc. v. Bend Electronics*, 564 F.Supp. 1471, 1474 (D. Nev. 1983). Accordingly, as the state and federal limits of jurisdiction are co-extensive, this Court does need not to explicitly consider whether a defendant's acts technically fall within the purview of Nevada's long-arm statute. Rather, the Court must only decide whether the exercise of personal

jurisdiction would be consistent with the requirements of federal due process. *Gordy v. Daily News, L.P.*, 95 F.3d 829, 831 (9th Cir. 1996); *Davis v. American Family Mut. Ins. Co.*, 861 F.2d 1159, 1161 (9th Cir. 1988). If the exercise of personal jurisdiction is consistent with federal due process, it also comports with Nevada's long-arm statute.

"Traditional notions of fair play and substantial justice" require that a defendant have certain "minimum contacts" with a forum state before it may be subject to the court's jurisdiction. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Personal jurisdiction may be either "general" or "specific." *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 nn. 8 - 9 (1984). "For a defendant to be subject to general *in personam* jurisdiction, it must have such continuous and systematic contacts with the forum that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Reebok Intern. Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995).

When a defendant's contacts do not invoke general jurisdiction, specific jurisdiction may nevertheless be invoked if the defendant's contacts give rise to the cause of action being asserted. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). To establish that specific jurisdiction comports with due process, a plaintiff must show: (1) that the nonresident defendant purposefully availed itself of the privilege of conducting activities in the forum, invoking the benefits and protections of its laws; (2) that the claim arises out of the defendant's forum-related activities; and (3) that the exercise of jurisdiction is reasonable. *Farmers Ins. Ex. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990).

"[C]orporate entities are presumed separate, and thus, the mere 'existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over

the parent on the basis of the subsidiaries' minimum contacts with the forum.'" *Viega GmbH v. Eighth Jud. Dist. Ct.*, 328 P.3d 1152, 1157 (Nev. 2014).

Finally, the Court notes that a plaintiff has the ultimate burden of establishing that the Court has personal jurisdiction over a defendant. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995).

Under Nevada law, the general rule is that when a corporation sells all of its assets to another corporation, the purchaser is not liable for the debts of the seller. *Village Builders 96, L.P. v. U.S. Laboratories, Inc.*, 121 Nev. 261, 267–68. To overcome a motion for summary judgment, the plaintiff must present evidence establishing that the rule does not apply in this case. *Id*. The four exceptions are "(1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction is really a consolidation or a merger; (3) when the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction was fraudulently made in order to escape liability for such debts." *Id*. at 268.

## IV.   DISCUSSION

Zimmer Biomet Holdings asserts, and Hix does not dispute, Zimmer Biomet Holdings is not the entity that designed, manufactured, labelled, distributed, marketed, and sold the M2a Magnum device implanted in Hix in 2010 and removed from him in 2012. Zimmer Biomet Holdings argues that, as such, it can neither be held liable on any of Hix's claims nor subject to the personal jurisdiction of for those claims. Hix counters that Zimmer Biomet Holdings became liable for Biomet's pre-June 2015 conduct either because it (a) assumed Biomet's debts through Zimmer Holdings acquisition of Biomet, or (b) because Zimmer Biomet Holdings acquisition of Biomet was actually a merger of Zimmer Holdings and Biomet. Hix also argues that Zimmer Biomet is liable

for post-June 2015 conduct of failing to warn Hix regarding metallosis. None of Hix's arguments are meritorious.

Hix has not directed the Court's attention to any competent evidence that Zimmer Biomet Holdings agreed, as part of the transaction in which Zimmer Holdings acquired Biomet, to assume Biomet's liability arising from the M2a Magnum products liability litigation.[3] In its 2014 Annual Report, Zimmer Holdings represented that it would "pay off all of LVB's outstanding funded debt." Hix does not offer any evidence that Biomet's liability stemming from the M2a Magnum lawsuits was an outstanding funded debt of LVB at the time of the June 2015 merger.

Hix also fails to direct the Court's attention to any competent evidence that Zimmer Holdings acquisition of Biomet, Inc. was actually a merger of Zimmer Holdings and Biomet, Inc. Without dispute, in its 2014 Annual Report, Zimmer Holdings recited that "<u>we</u> entered into a definitive agreement to merge with LVB Acquisition, Inc. (LVB), the parent company of Biomet, Inc. (Biomet), in a cash and stock transaction valued at approximately $13.35 billion." Zimmer Holdings further referred to this transaction as the "Biomet merger." However, as recited in the 2014 Form 10-K Annual Report, the words "'Zimmer,' 'we,' 'us,' 'our,' and similar words refer collectively to Zimmer Holdings, Inc. and its subsidiaries. Zimmer Holdings refers to the parent company only." Similar language is recited in Zimmer Biomet Holdings subsequent annual reports which Hix has

---

[3] The Court notes that Hix's opposition cites exclusively to the declaration of its counsel, Naven Ward, as evidence supporting its arguments. A review of Ward's declaration establishes that it consists of quotes from and citation to various documents (primarily annual reports of Zimmer Biomet Holdings and Zimmer Holdings) in addition to Ward's characterization and arguments regarding those documents. As Zimmer Biomet Holdings has not objected to the authenticity of the documents attached to Ward's declaration, the Court has considered those documents in deciding the present motion. However, Ward's characterizations and arguments, as asserted in his declaration, are not evidence and the Court has not considered those arguments either as evidence or as argument relevant to the present motion.

submitted into evidence. The Court recognizes that the Zimmer Holdings' 2014 Annual Report did report on the transaction underlying its acquisition of Biomet, Inc. In addition, the other annual reports of Zimmer Biomet Holdings proffered by Hix reported on the business of Zimmer Biomet Holdings and its subsidiaries collectively. However, the statements do not raise a triable issue of fact bringing into dispute the corporate structures of, and relationships between, Zimmer Biomet Holdings and its subsidiaries. Rather, the structure of Zimmer Biomet Holdings' acquisition of Biomet, and the resulting corporate entities and relationships between those entities, are established by the April 24, 2014, Agreement and Plan of Merger signed by Zimmer Holdings, Owl Merger Sub, and LVB Acquisitions. These facts are further confirmed by the June 26, 2015, SEC Form 8-K filing by Zimmer Biomet Holdings, Inc, which Zimmer Biomet Holdings has submitted into evidence. Those documents establish that the transaction was accomplished by means of a merger between Owl Merger Sub, an indirect wholly owned subsidiary of Zimmer Holdings, and LVB Acquisitions, resulting in LVB continuing as the surviving corporation and an indirect wholly owned subsidiary of Zimmer Holdings (which was contemporaneously renamed to Zimmer Biomet Holdings). That Zimmer Biomet Holdings annual reports detail the business of Zimmer Biomet Holdings *and its subsidiaries* collectively does not raise an inference that the subsidiaries lack a separate and distinct corporate form, or that Zimmer Biomet Holdings is merely an alter ego for any of its subsidiaries including, in particular, Biomet, Inc.

Similarly, Hix's evidence that two individuals were simultaneously officers of both Biomet Inc. and Zimmer Biomet Holdings does not raise an inference that Zimmer Biomet Holdings resulted from a merger of Biomet and Zimmer Holdings. Accordingly, the Court finds that Hix has not shown that Zimmer Biomet Holdings became liable for Biomet, Inc.'s liabilities arising from this lawsuit.

Hix's additional argument, that Zimmer Biomet Holdings is liable for a post June 25, 2015, failure-to-warn claim, is also without merit. The Court assumes, for purposes of this motion, that a manufacturer of a medical device has a post-sale duty to warn a consumer of defects of which the manufacturer first learns after the manufacture and sale of the device. The Court also assumes that this post-sale duty to that extends to the parent corporation of the manufacturer. Such a duty, however, does not and cannot extend to a person who is no longer the consumer of the medical device at issue. Hix has acknowledged that he had a revision surgery in 2012, in which the M2a Magnum implant device was removed and replaced with a different implant. Further, Hix has not offered any argument suggesting that he has been injured by an asserted failure to warn, or even that Zimmer Biomet Holdings is failing to warn. Rather, he offers only a nebulous argument that Zimmer Biomet is violating a "duty to continue to learn" about metallosis. As Hix had the M2a Magnum removed from his body long before Zimmer Biomet Holdings became the parent company of Biomet, he cannot hold Zimmer Biomet Holdings liable for failing to adequately warn him regarding the risks of having the M2a Magnum implanted either before or during the time the M2a Magnum was implanted in his body.

The Court further finds that, for the same reasons, this Court cannot exercise specific personal jurisdiction over Zimmer Biomet Holdings. As Hix has not offered any argument that this Court can exercise general personal jurisdiction over Zimmer Biomet Holdings, summary judgment is also appropriate on the basis that this Court lacks personal jurisdiction over this defendant.

///

///

///

///

10

**CONCLUSION**

IT IS HEREBY ORDERED that Zimmer Biomet Holdings, Inc.'s Motion for Summary Judgment (ECF No. 272) is GRANTED.

IT IS SO ORDERED.

Dated: March 29, 2022

_____
ROBERT C. JONES
United States District Judge

11